UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA W. BERRY,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security,<br><br>    Defendant. | NO. EDCV 07-1240-CT<br><br>OPINION AND ORDER |

For the reasons set forth below, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. Section 405(g) to defendant Commissioner of Social Security ("the Commissioner") for further administrative action consistent with this opinion and order.

### SUMMARY OF PROCEEDINGS

On September 26, 2007, plaintiff, Donna W. Berry, ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). The parties filed a consent to proceed before the magistrate judge. On February 1, 2008, plaintiff filed

a memorandum of points and authorities in support of plaintiff's complaint. On March 3, 2008, the Commissioner filed a brief in opposition.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1. Proceedings

On May 6, 2005, plaintiff filed applications for disability insurance benefits and Supplemental Security Income ("SSI"), alleging disability since March 28, 2004 due to degenerative disc disease. (TR 17, 51).[1] The applications were denied initially and upon reconsideration. (TR 25-26, 39-44, 46-50).

Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"), and on April 4, 2007, plaintiff, in pro se, appeared and testified before an ALJ. (TR 113-135). A lay witness also testified on plaintiff's behalf. On April 17, 2007, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because her residual function capacity enabled her to perform a significant range of light work, which allowed her to perform her past relevant work as a sales associate. (TR 17-23). On July 30, 2007, plaintiff's request for review of the ALJ's decision was denied by the Social Security Appeals Council. (TR 4-6). Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

//

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2. <u>Summary Of The Evidence</u>

The ALJ's decision is attached as an exhibit to this opinion and order and, except as otherwise noted, materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff essentially contends as follows:

1. The ALJ erred by relying exclusively on the RFC assessment of the state agency physicians and failing to properly consider the opinions of plaintiff's treating physician, Dr. David Saimbanes;
2. The ALJ erred in his consideration of plaintiff's credibility;
3. The ALJ erred by failing to call a medical expert to help assess plaintiff's RFC; and,
4. The ALJ erred by failing to call a vocational expert to determine whether she could perform her past relevant work given her residual functional capacity.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance. <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not

3

substitute its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).

<u>DISCUSSION</u>

1. <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed

impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2.  Issues

   A. Physicians' Opinions

Plaintiff contends that the ALJ erred by relying exclusively on the opinions of the state agency physicians who reviewed plaintiff's records in assessing plaintiff's residual functional capacity. Plaintiff further contends that the ALJ failed to properly consider the opinions of her treating physician, David Siambanes, D.O.[2]

"Medical opinions are statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairment(s), including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical and mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

---

[2]Licensed osteopaths are "acceptable medical sources" under Social Security regulations. See 20 C.F.R. §§ 404.1513, 416.913.

The Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. §§ 404.1527, 416.927. Nevertheless, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted). However, even if the treating physician's opinion is contradicted by other doctors, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for doing so which are supported by substantial evidence. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citation omitted).

Here, the ALJ adopted the RFC assessments of the state agency physicians who reviewed plaintiff's records on June 30, 2005 and December 5, 2005. State agency medical consultants are "highly qualified physicians" who are also "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). However, the opinion of a non-examining physician, by itself, does not constitute substantial evidence that justifies rejection of the opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). It is error for an ALJ to neither explicitly reject the opinion of an examining physician nor set forth specific, legitimate reasons for crediting a non-examining medical advisor over an examining physician. Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996).

Plaintiff's July 30, 2004 magnetic resonance imaging studies showed that she had "moderate to severe degenerative disc disease" at L5-S1 and "mild levoscoliosis." (TR 105). In April of 2005 her

doctor's treatment notes state that her x-rays "show L5-S1 severe disc space collapse" and L2-3 dessication. (TR 98). Although an electromyelogram study was normal and showed no evidence of radiculopathy or neuropathy, plaintiff's straight leg raising test on her left leg was positive. (TR 98, 99). At that time, plaintiff's treating physician, Dr. Siambanes, opined that she was disabled for three months. (TR 99). The treatment notes, which contain minimal notations concerning examinations of plaintiff, indicate some weakness in the left lower extremity and tenderness in the lower back. (TR at 98, 100, 102, 107).

Plaintiff attempted conservative therapies, including physical therapy and injections, but these did not work. As a result, Dr. Siambanes recommended surgery. In evaluating whether surgery was appropriate, Dr. Siambanes stated:

> I did discuss with her the options, she does not have many conservative options remaining since she has not responded to multiple attempts. She is significantly in pain, she has difficulty changing positions, and she cannot sit, stand or walk for any period of time. It is affecting her daily activities quite significantly.

(TR 89).

The ALJ did not mention or discuss Dr. Simabanes' statements concerning plaintiff's limitations. Instead, the ALJ stated that "a review of the record in this case reveals no restrictions recommended by the treating doctor." (TR 22). While Dr. Siambanes statements are not specific recommendations concerning occupational restrictions, they do appear to reflect his judgment about how significantly plaintiff's activities are limited by the pain caused by her condition. See 20 C.F.R. § 404.1527(a)(2). At minimum,

1 Dr. Siambanes statements are ambiguous as to whether they reflect
2 his judgments or are simply restating plaintiff's self-reported
3 complaints, triggering the ALJ's duty to develop the record on that
4 issue.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.
5 2001)(ALJ has a special duty to develop the record, which is
6 heightened when the plaintiff is unrepresented and triggered by
7 ambiguous evidence).  The ALJ's failure to discuss Dr. Siambanes'
8 statements - or at least develop the record to clarify whether they
9 constitute his medical opinions or are simply a restatement of
10 plaintiff's self-reported limitations - while crediting the
11 opinions of the state agency physicians who had never examined
12 plaintiff was error.  See Nguyen v. Chater, 100 F.3d at 1464.

    Accordingly, remand is warranted for further consideration of
Dr. Siambanes' statements.  Plaintiff was never examined
consultatively, and on remand the Commissioner will have an
opportunity to determine whether a consultative examination is
appropriate.

    B.   Credibility Assessment

    Plaintiff further contends that the ALJ did not provide
legally sufficient reasons for finding her testimony and statements
concerning her subjective complaints and limitations incredible.

    As the Ninth Circuit explained in Rollins v. Massanari, 261
F.3d 853, 856-57 (9th Cir. 2001):

> "[O]nce a [plaintiff] produces objective medical evidence
> of an underlying impairment, an [ALJ] may not reject a
> [plaintiff's] subjective complaints based solely on lack
> of objective medical evidence to fully corroborate the
> alleged severity of pain."  If the ALJ finds the
> [plaintiff's] pain testimony not to be credible, the ALJ
> "must specifically make findings that support this

conclusion," and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit the [plaintiff's] testimony." If there is no affirmative evidence that the [plaintiff] is malingering, the ALJ must provide clear and convincing reasons for rejecting the [plaintiff's] testimony regarding the severity of symptoms.

(citations omitted). "Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted)

The ALJ rejected plaintiff's testimony primarily because he found that her subjective limitations and complaints were not supported by the objective medical evidence. (TR 21). As discussed above, the ALJ may not reject such statements based solely on the fact that the objective medical evidence does not support the alleged degree of symptoms.

The ALJ also relied on the fact that he found no restrictions recommended by plaintiff's treating physicians. (TR 22). As discussed above, this ignores the statements of Dr. Siambanes, which, while not specifically "recommending" restrictions, indicate significant limitations in plaintiff's functioning. In addition, the ALJ found that plaintiff's treatment is "minimal and conservative, and not documented as needing to be any more aggressive." (Id.) This finding ignores Dr. Siambanes recommendations concerning surgery. Plaintiff indicated that she had not had the surgery because she cannot afford it without

benefits. (TR 127-28). The ALJ also pointed out that plaintiff did not exercise, but she testified that she was told not to by her therapists. (TR 121).

Finally, the ALJ cited plaintiff's testimony that she is currently taking Vicodin for her pain and that it helps her. (TR 22). This alone does not indicate that plaintiff's subjective symptom testimony is not credible. In addition, the ALJ found that plaintiff's long-standing use of Vicodin raised "inferences of efficacy and toleration." (Id.) However, there is no evidence in the record to support such a finding. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir.1975)(because an ALJ is not a medical expert, the ALJ may not go "outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition.").

Plaintiff may well be able to work, but the ALJ failed to give legally sufficient reasons for discounting the credibility of her subjective complaints. Accordingly, remand is warranted on this issue.

C.  **Medical Expert**

Plaintiff also asserts that the ALJ erred by failing to call a medical expert to testify regarding plaintiff's functional capacity.

Where the record is inadequate or ambiguous, the ALJ has a duty to fully and fairly develop the record. Tonapetyan v. Halter, 242 F.3d at 1150. In addition, "the ALJ ... may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a

medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2p.

Here, the ALJ relied on the opinions of the state agency physicians, who reviewed the medical records just as a non-examining medical expert would. However, this matter is being remanded for further evaluation of plaintiff's credibility and consideration of the statements of plaintiff's treating physician. On remand, the Commissioner will have an opportunity to determine whether eliciting testimony from a medical expert is called for or appropriate in light of his further consideration of this evidence.

D. Vocational Expert

Plaintiff finally contends that the ALJ erred in failing to call a vocational expert to determine whether plaintiff is capable of performing her past relevant work.

At step four, plaintiff has the burden of showing that plaintiff could no longer perform plaintiff's past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). Nonetheless, the ALJ had the duty "to make the requisite factual findings to support his conclusion." Id. This duty required the ALJ to examine plaintiff's "'residual functional capacity and the physical and mental demands' of [plaintiff's] past relevant work." Id. at 844-45 (quoting 20 C.F.R. §§ 404.1520(e), 416.920(e)). Plaintiff must be able to perform her past relevant work *either* as actually performed or as generally performed in the national economy. Id. at 845 ("[w]e have never required explicit findings at step four regarding a [plaintiff's] past relevant work both as generally

performed *and* as actually performed") (emphasis in original).

"The Social Security Regulations provide that the ALJ may draw on two sources of information to define [plaintiff's] past relevant work as actually performed: (1) [plaintiff's] own testimony, and (2) a properly completed vocational report." Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing Pinto v. Massanari, 249 F.3d at 845). "In assessing [plaintiff's] testimony, the ALJ is responsible for determining credibility and resolving conflicts and ambiguities." Id. at 1083-84 (citing Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999)). The ALJ found that plaintiff was able to perform her past relevant work as actually performed based on plaintiff's own description of her past duties. (TR 22, 63). The ALJ was not required to call a vocational expert to do so. However, on remand, the Commissioner will have an opportunity to elicit the testimony of a vocational expert if appropriate after further consideration of plaintiff's testimony and the statements of Dr. Siambanes.

## REMAND IS APPROPRIATE IN THIS CASE

The decision whether to remand a case for additional evidence is within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

Having considered the record as a whole, it appears that the present record is insufficiently developed.

//

## CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: March 6, 2006

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

**SOCIAL SECURITY ADMINISTRATION**
Office of Disability Adjudication and Review

17

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Donna W. Berry<br>(Claimant) | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| (Wage Earner) | 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<br>(Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On May 6, 2005, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on May 6, 2005. In both applications, the claimant alleged disability beginning March 28, 2004. The claims were denied initially on July 6, 2005, and upon reconsideration on December 8, 2005. Thereafter, the claimant filed a timely written request for hearing on February 13, 2006 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on April 4, 2007, in San Bernardino, California. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative. Also appearing and offering testimony was Mike Door, a friend of the claimant.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2008. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act from March 28, 2004 through the date of this decision.

See Next Page

**EXHIBIT**

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

See Next Page

EXHIBIT

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2. In the absence of any evidence to the contrary, I accept the claimant's assertion in this regard, and find she has not engaged in substantial gainful activity at any time since her alleged onset date. (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has a severe impairment of the musculoskeletal system (20 CFR 404.1520(c) and 416.920(c)).

Additionally, the claimant has an on-going history of high blood pressure (hypertension) which is sometimes uncontrolled due to her noncompliance regarding medications (Exhibit 3F, pp. 12, 21, 24). On March 30, 2004, she reported to the staff physician at Riverside County Regional Medical Center that she had been off her medications for one year. *Id.* at 24. The claimant routinely ran out of medications and, on May 26, 2005, she even denied the need to return to the clinic for an evaluation of her hypertension. *Id. at 12.* The record shows the claimant's hypertension can be controlled with medication; yet, she testified she was not currently taking any such medication. By and large, there is no indication that this condition has caused significant problems. Nor is there evidence of end-organ damage. Consequently, I find the claimant's

See Next Page



Donna W. Berry (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)

Page 4 of 7

20

hypertension, although medically determinable, is not a severe impairment nor is it a condition that causes more than slight limitations in her ability to sustain gainful work activity.

4. **The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

Although the claimant has the severe impairment listed above, her impairment does not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. This finding is supported by the opinion of the State Agency physicians, all of whom considered the relevant Listings.

5. **After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work activity, lifting and/or carrying 20 pounds occasionally, 10 pounds frequently, standing and/or walking or sitting about six hours in an eight-hour workday with unlimited pushing and/or pulling, other than as shown for lifting and/or carrying. The claimant may occasionally climb ramps and stairs, balance, kneel, stoop, crouch, or crawl, and should avoid climbing ladders, ropes or scaffolds. She has no manipulative, visual, or communicative limitations; and she should avoid concentrated exposure to extreme cold and hazards.**

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that I must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

See Next Page

EXHIBIT

Donna W. Berry (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)                                   Page 5 of 7

**21**

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

In her initial application, the claimant maintained she was unable to perform any work and was disabled as a result of having degenerative disc disease. The claimant complained upon reconsideration that she had pain that was worsening in her back, in her left hip, and down her left leg. She reported she was unable to stand for more than one to two hours, or sit more than one hour. When the claimant requested a hearing, she stated the pain in her back had increased. She testified at the hearing that she has constant pain in her low back which runs down her left hip and leg to her foot. The claimant said she has constant pain in her left leg and estimated she can lift five pounds, stand approximately one hour, walk one block, and sit 30 minutes. She reported she has a back brace which she wears to take the pressure off her back.

After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

The minimal objective evidence in the record fails to support the claimant's allegations regarding her alleged inability to sustain gainful activity. Records from Riverside Regional Medical Center indicate the claimant has a history of back pain in addition to the hypertension discussed above (Exhibit 3F, pp.1-25). A lumbar spine x-ray in July 2004 showed the claimant had moderate to severe degenerative disc disease at L5-S1 and mild levoscoliosis. *Id at 20.* These findings indicated the claimant's condition had only progressed slightly from a study done in 1999 and no acute abnormality was demonstrated. *Id.* A progress note from October 2004 reported that a magnetic resonance imaging (MRI) of the claimant's lumbar spine revealed degenerative disc disease at L2-L3 and L5-S1 and spinal stenosis. *Id. at 17.* And in January 2005 the claimant was reportedly limping on her left side. *Id. at 15.* On March 9, 2005, the results of the claimant's electromyogram (EMG) were negative for radiculopathy or neuropathy. *Id. at 14.*

See Next Page



EXHIBIT

In making my determination, the assessment by the Board Certified State agency review physicians is given substantial weight and is adopted as the residual functional capacity herein (Exhibit 2F, pp. 1-8). Dr. S.C. Swan concluded on June 30, 2005, that the claimant was capable of work activity within the parameters described, and after a careful reconsideration, on December 5, 2005, Dr. George G. Spellman affirmed his conclusions, rendering them more persuasive.

Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

I find the claimant's testimony establishes no different conclusions. At the hearing she asserted having low back and left lower extremity pain for 10 years that worsens with activities. She testified she had three epidurals in 2005 with no lasting benefit, and denied that physical therapy was helpful. The claimant admitted she does not do exercises and claimed she occasionally uses self-procured back support. She asserted her only current medication is Vicodin, which she has used for years and reported she is currently taking it three times a day. The claimant admitted she derived benefit from Vicodin. She complained it made her drowsy but there is no confirmation of this in her medical records. The claimant's long standing prescription and use raise inferences of efficacy and toleration. There are many other medications in the analgesic armamentarium which could be used should Vicodin ever prove ineffective or possessive of untoward side effects. As discussed above, the claimant's self-assessment is that she can stand one hour, walk one block, lift five pounds and sit 30 minutes. However, these limitations are unsupported by any record or report and are rebutted by the opinions of the State agency physicians. The claimant's current treatment is minimal and conservative, and not documented as needing to be any more aggressive. The testimony of the claimant's friend, Mr. Door, added nothing of relevance.

The claimant has a medically determinable impairment that could reasonably cause some pain and dysfunction. However, the complaints of a disabling level of pain are not credible and are not reasonably supported by objective medical evidence, especially when consideration is given to the idiosyncratic nature of pain (SSR 96-7p).

**6. The claimant is capable of performing past relevant work as a sales associate. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

Based on the residual functional capacity assessed above, the State agency vocational consultants found the claimant could, in fact, return to work as a Sales Associate, as she described such activities in her Work History report on May 25, 2005 (Exhibit 2E, p.1). I agree with their conclusions. Furthermore, the Dictionary of Occupational Titles (DOT) describes a sales associate[1] as an occupation requiring no more than light work activity. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed.

---

[1] Dictionary of Occupational Titles (DOT) CODE: 279.357-054 TITLE(s): SALESPERSON, GENERAL MERCHANDISE (retail trade; wholesale tr.) GOE: 08.02.03 STRENGTH: L GED: R3 M2 L2 SVP: 3 DLU: 81

See Next Page

EXHIBIT

Donna W. Berry (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)  Page 7 of 7

**23**

7.  The claimant has not been under a disability, as defined in the Social Security Act, from March 28, 2004 through the date of this decision (20 CFR 404.1520(e)(f) and 416.920(e)(f)).

### DECISION

Based on the application for a period of disability and disability insurance benefits filed on May 6, 2005, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on May 6, 2005, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

F. Keith Varni
Administrative Law Judge

APR 17 2007
Date

mkg

**EXHIBIT**